UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
ANDREA PETTERSON,

                                Plaintiff,

     -against-

STATE UNIVERSITY OF NEW YORK AT
STONY BROOK,

                                Defendant.
------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CV- 1228 (DRH)

**APPEARANCES:**

**For Plaintiff:**
Jonathan A. Tand and Associates, P.C.
1025 Old Country Road, Suite 314
Westbury, New York 11590
By:    John C. Luke, Jr, Esq.


**For Defendant:**
Letitia James, Attorney General for the State of New York
300 Motor Parkway, Suite 230
Hauppauge, New York 11788
By:    Susan M. Connolly, Esq.


**HURLEY, Senior District Judge:**

       Plaintiff Andrea Petterson ("Plaintiff" or "Petterson") commenced this action against defendant State University of New York at Stony Brook ("Defendant" or "Stony Brook") asserting claims of gender discrimination and unlawful retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. and Article 15 of the New York State Executive law § 290 *et seq*. According to Plaintiff, she was subjected to a hostile work

environment and, when she complained about it, she was retaliated against by further harassment and then termination.

Presently before the Court is Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reason set forth below the motion is denied.

## BACKGROUND

The following facts are taken from the parties' 56.1 statements and exhibits and are undisputed unless otherwise noted.

Stony Brook is one of four New York State University Centers. Plaintiff was initially hired by Stony Brook effective November 30, 2009, as a Horticulturalist Technician I ("Tech I"), assigned to the Department of Campus Operations and Maintenance, reporting first to Matt Kibbey and then Al Dwyer ("Dwyer"). Tech I is a civil service position represented by the Public Employees Federation (PEF).

Plaintiff completed her one year probationary period on November 29, 2010. Her Tech I performance evaluations were generally satisfactory. The supervisors reviewing her performance as a Tech I included Dwyer and John Alessio ("Alessio"). In view of Plaintiff's good performance, a new full time managerial position of Forest Property Technician I, functioning as an Assistant Facilities Program Coordinator ("Coordinator") was proposed by the Department of Campus Operations and Maintenance for her. She was given a one year appointment, effective July 19, 2012, to the position of Coordinator reporting to Alessio. The Coordinator position was represented by the United University Professions, Inc. ("UUP") union.

Plaintiff was advised that in the new position she was not eligible for compensatory time or overtime. Plaintiff's new performance program set out significantly different work obligations for her new position, although Plaintiff asserts her repeated requests for a job description went unanswered. As a Stony Brook employee, Plaintiff was aware that the S.U.N.Y. Policies of the Board of Trustees ("Policies") was "one of the policies defining her obligations in employee relations, including the granting of leave." The granting of leave was also covered by the collective bargaining agreement between the State of New York and UUP. ("the UUP Agreement"). The UUP Agreement contains a grievance process for review of allegations that a specific provision of the UUP Agreement has been violated. Plaintiff points out, however, that the UUP Agreement also states that employees can elect to have claims of discrimination reviewed in accordance with State and Federal procedures. Under the UUP Agreement a grievance may be brought by the union on behalf of a member. Plaintiff never filed a grievance with regard to any of the allegations in her Amended Complaint although a complaint to the union was not her only means of seeking redress for alleged discrimination.

On June 12, 2012, Plaintiff requested and was subsequently approved for leave under the Family Medical Leave Act ("FMLA"). She did not timely submit documentation necessary to clear her return to work. Defendant asserts that Plaintiff had a recurring issue with time off as well as submitting accurate time records in a timely fashion in order to be paid. Plaintiff maintains that the problem was that Alessio did not enter her time properly although Alessio testified that each individual is responsible for submitting their time sheets and his job was to ensure they were accurate.

Almost immediately upon appointment to her new position in 2012, and for the first time, Plaintiff began to complain about Alessio, her supervisor. Plaintiff complained to Michele Lake,

an administrative assistant in the Office of Defendant's Vice President for Administration, but apparently not a State employee, about an alleged comments Alessio made during a group meeting about the sexual practices of two other individuals ("Sheldon and Charlie) which she found offensive. She asserts that she also complained to Terrance Harrigan ("Harrigan"), Assistant Vice President for Facilities, about comments made by Alessio in or around March 2013 and to Barbara Chernow ("Chernow"), Vice President of Admissions and Facilities about those comments on May 16, 2013; she also complained to Defendant's Office of Institutional Diversity and Equity about harassment and discrimination in the summer of 2013. Defendant maintains that on or about May 30, 2013, Plaintiff was advised she would thereafter report to Harrigan as her supervisor instead of Alessio; Plaintiff asserts, however, that Harrigan did not become her direct supervisor until August 23, 2013 and that Alessio still supervised her work.

After Harrigan became her supervisor, Plaintiff attended regularly scheduled meetings held by Harrigan which included males and females.

In or about December 2013, Plaintiff contacted the Office of Diversity and Affirmative Action ("ODAA") to file a complaint of sexual harassment against Alessio. Defendant maintains that its Labor Relations Department, with the help of ODAA, conducted a full investigation of Plaintiff's complaint despite plaintiff missing appointments and not returning calls. Plaintiff points out, however, that according to the deposition testimony of Marjorie Leonard, Director for the Office of Institutional Diversity and Equity (the "Institute"), she handed over the complaint to the Institute[1] and had no further involvement; the Institute did not perform an investigation but merely passed the information over to Labor Relations.

---

[1] It is unclear whether the Institute and the ODAA are the same or separate entities.

On January 6, 2014 Plaintiff filed a Workplace Violence Incident Report concerning an incident between her and Dwyer on January 4, 2014, which was investigated. As a result Dwyer was reprimanded for the assault but the reprimand did not reference the demeaning language Plaintiff complained about.

On or about February 6 or 7, 2014, plaintiff filed a Complaint with the New York State Division of Human Rights asserting that she was discriminated against as recently as February 6, 2014. Her allegations were that she had been harassed or intimidated, subjected to a hostile work environment by being denied leave and other benefits and retaliated against after she complained to Michele Lake about Alessio's comments about two men perceived to be gay. The complaint also referenced comments by Alessio about Asian prostitutes, a same sex relationship with Chernow and retaliation after she complained to Harrigan regarding Alessio's sexual comments.

Plaintiff was issued a "Written Counseling Memorandum" for her behavior during a meeting on May 15, 2014. On June 20, 2014 plaintiff was issued a performance evaluation signed by Harrigan which was "negative regarding her abilities in completing the requirements of her position." On June 20, 2014 Defendant exercised its option under the applicable labor union contract to pay the balance of Plaintiff's salary and not renew her appointment.

In support of her claims, Plaintiff offers the following disputed facts:

While prior to her promotion her relationship with Dwyer was good, it began to deteriorate thereafter. He tried to run her jobs by interfering with her interactions with contractors for whom she was responsible. Dwyer repeatedly referred to her as "bitch" and "cunt." Dwyer would use the women's bathroom near Plaintiff's office, coming out zipping his pants just as Plaintiff arrived in the morning, after which urine would be sprayed about the bathroom. One day Dwyer engaged in intimidating behavior as she was walking from the

parking lot to her office by driving his truck so close to her Plaintiff "could feel the heat of his truck against her body." Another time, he knocked her down by intentionally bumping into her as he was leaving a room. He also had compost she was supposed to use for her duties dumped into an inaccessible area and had her work vehicle plowed in with snow making it inaccessible. Her employment environment was so hostile that she attempted to return to her lower paying position.

About two or three weeks after her promotion, Alessio began making inappropriate comments about her and her co-workers during meetings. For example, he asked plaintiff if she knew why a certain other male employee's shoes were curled and when she did not know, told her it was because he spent so much time on his knees "sucking dick." He asked inappropriate sexual questions of her regarding her presumed same-sex relationship with Chernow ("How is Barbara's bush?") and referred to his and other's sexual activity (whether females of Japanese or Chinese descent would be easier to pick up and comments about having prostitutes in the back of a car).

Plaintiff complained about the foregoing to both Harrigan and Chernow. This included complaining to Harrigan about Alessio's inappropriate sexual comments in or around March 2013; complaining to Chernow about Alessio's sexual comments on May 16, 2013, and complaints of discrimination to both Harrigan and Chernow on July 11, 2013.Plaintiff made several complaints about gender and sexual discrimination to Marjorie Leonard of the Office of Institutional Diversity and Equity, including being referred to as "bitch," and Leonard found Plaintiff credible regarding those complaints. The complaints were not investigated by Leonard's office. Rather the information was passed on to the Labor Relations Department. After complaining to Chernow about Alessio's conduct, Harrigan began the weekly managers' meeting

with the words "Hello guys, oh and Lady" and then immediately proceeded to advise the otherwise all man group that they would be required to undergo sexual harassment training. However, she never received that training. Shortly thereafter, having returned to work from a brief medical leave, Plaintiff discovered that her office had been located to a former storage area with no windows or locks and no working desk, with some of her personal items missing, including the notebook in which she kept a record of Alessio's behavior.

Prior to the May 15, 2014 "Written Counseling Memo", Plaintiff did not have any written discipline in her employee file. Moreover, during the 2013-14, she received many accolades and compliments for her work. She introduced Defendant to the Tree Campus USA organization and in recognition of Plaintiff's work keeping Defendant's trees beautiful and healthy, Defendant was recognized by Tree Campus USA.

## PRODECURAL BACKGROUND

On or about February 6, 2014, Plaintiff filed a complaint with the New York State Division of Human Rights charging Defendant with unlawful discrimination practices because of her sex and opposition to discrimination and retaliation. Plaintiff received a right to sue letter on or about December 11, 2014. This action was commenced on March 9, 2015. Following discovery, Defendant sought summary judgment as to all of Plaintiff's claims by motion dated March 19, 2018 and presented to the Court, once fully briefed, on May 24, 2018.

## DISCUSSION

I. **Summary Judgment Standard**

Summary judgment pursuant to Rule 56 is appropriate only where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See*

*Viola v. Philips Med. SYS. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (*quoting Anderson*, 477 U.S. at 252) (internal quotation marks omitted), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing Anderson, 477 U.S. at 252), because the "evidentiary burdens that the

respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id*. at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

## II. The Parties' Contentions

Defendant argues first that in view of Title VII's exhaustion requirement"[a]ll of Plaintiff's claims which date prior to April 12, 2013 are untimely" and any allegations not contained in her Division of Human Rights complaint or reasonably related thereto cannot proceed. It also asserts that Plaintiff cannot establish gender discrimination because she has not shown that similarly situated employees of a different gender were treated more favorably and the evidence presented does not give rise to an inference of discrimination. Turning to the retaliation claim, Defendant maintains that Plaintiff did not engage in protected activity, there is no evidence of a causal connection and no direct evidence of discriminatory animus.

In response, Plaintiff argues that she has submitted sufficient evidence to support a prima facie case that her termination was the result of discrimination and circumstances supporting an inference of discrimination. She further maintains that there is sufficient evidence of both a hostile work environment and retaliation to create an issue of fact for trial.

### III. Gender Discrimination Claim

#### A. Applicable Law

Title VII prohibits an employer from discriminating against an employee on the basis of race, color, religion, sex, or national origin. Title VII and NYSHRL discrimination claims are analyzed for summary judgment purposes under the familiar burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Walsh v. New York City Housing Auth.*, 828 F.3d 70, 74 (2d Cir. 2016). Under *McDonnell Douglas* and its progeny, a plaintiff must first establish a prima facie case of discrimination by showing that: (1) she belonged to a protected class, (2) was qualified for the position she held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003). If the plaintiff establishes a prima facie case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for [the adverse act]." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks and citation omitted). Should the employer satisfy its burden, the *McDonnell Douglas* framework and its presumptions and burdens disappear, leaving the sole remaining issue of "discrimination vel non." *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Where, as here, a plaintiff's argument that there are circumstances giving rise to an inference of discriminatory intent is the same as her argument for pretext, they may be analyzed together. *See Crawford v. Coram Fire Dist.*, 2015 WL 10044273 (E.D.N.Y. May 4, 2015); *D'Agostino v. LA Fitness Intern.*, LLC, 901 F. Supp.2d 413, 422 n. 4 (E.D.N.Y. 2012); cf. *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 188 (2d Cir. 2006) (declining to resolve dispute regarding establishment of prima facie case of age

discrimination on the ground that plaintiff had not "pointed to any record evidence to dispute [defendant's] legitimate reason for the alleged adverse employment action").

B. **Analysis of Discrimination Claim**

Preliminarily, the Court will address the issues of exhaustion and timeliness of Plaintiff's claims.

1. . <u>Exhaustion</u>

A court has jurisdiction to hear only claims that are contained in an EEOC charge or are "reasonably related" to the claims in Plaintiff's administrative complaint. *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998). "This exhaustion requirement is an essential element of Title VII's statutory scheme," *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), and is meant "'to give the administrative agency the opportunity to investigate, mediate, and take remedial action,'" *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999) (internal quotation marks omitted). "There are three types of reasonably related claims: (1) claims that fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) claims that allege retaliation arising from the filing of an EEOC charge; and (3) claims that allege further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Caddick v. Pers. Co. I LLC,* 2018 WL 3222520, at *6 (S.D.N.Y. June 29, 2018) (internal quotation marks omitted). "As a preliminary matter, the 'reasonably related' analysis usually focuses on whether a plaintiff has administratively exhausted claims, not allegations underlying those claims." *Kleinman v. Fashion Inst. Of Tech.*, 2017 WL 3016940, *6 (S.D.N.Y. July 14, 2017) (internal quotation marks omitted).

The Court finds that Plaintiff's claims are reasonably related to the claims set forth in her administrative complaint. That complaint alleged discrimination, a hostile work environment based on alleged harassment and retaliation for her complaints of discrimination. As evidenced by the Division of Human Rights' "Final Investigation Report and Basis of Determination" the incidents on which Plaintiff relies in this action were investigated by the Division of Human Rights. (*See* Ex. S to Luke Aff.) Moreover, they illustrate the harassment, discrimination and retaliation she allegedly suffered and thus are reasonably related to the allegation in her administrative complaint. *See id.* at *7. Additionally, to the extent Plaintiff asserts that her termination was an act of discrimination and/or the result of retaliation for her complaint to the Division of Human Rights it is properly considered as a claim arising from the filing of an EEOC charge.

2. Timeliness

Title VII claims are timely when the "alleged discriminatory conduct ... occurred less than 300 days prior to the filing of the EEOC charge." *Taylor v. City of New York*, 207 F. Supp. 3d 293, 300 (S.D.N.Y. 2016); see also 42 U.S.C. § 2000e-5(e)(1). When certain of a plaintiff's allegations occurred prior to 300 days before the filing of an EEOC charge, "the nature of the claim determines what consideration will be given to the earlier conduct." *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004). Claims "may not be based on discrete acts falling outside the limitations period," but evidence of earlier behavior "may constitute relevant background evidence in support of a timely claim." *Id*. (internal quotation marks omitted).
Under the continuing violation exception, however, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they

would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012) (internal quotation marks omitted). The continuing violation doctrine does not apply to a series of discrete acts "such as termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). However, the doctrine may apply to a claim for an allegedly hostile work environment because the "very nature [of the claim] involves repeated conduct." *Id*. at 115; *see also Chin*, 685 F.3d at 156. Thus, with regard to a hostile work environment claim, "the statute of limitations requires that only one ... act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider 'the entire time period of hostile environment' in determining liability.' " *Petrosino v. Bell Atlantic*, 385 F.3d 210, 220 (2d Cir. 2004) (quoting *Morgan*, 536 U.S. at 117).

In accordance with the foregoing, as Plaintiff has put forth evidence of at least one act that occurred within 300 days of the filing of her administrative claim (e.g., the January 6, 2014 incident with Dwyer outside her office), the Court may consider the entire period of the claimed hostile environment in addressing Plaintiff's hostile work environment claim. With respect to her claim of discrimination, Plaintiff's papers on this motion rely on only one adverse employment action – her termination – and that event is within the limitations period and therefore properly considered; as to any events outside the limitations period, they may be considered as background evidence supporting this claim.

        3.        <u>Analysis of Discrimination Claim</u>

The crux of Defendant's argument in support of summary judgment on Plaintiff's gender discrimination claim is that Plaintiff has failed to show that similarly situated employees of a different gender were treated more favorably. (*See, e.g.,* Def.'s Mem. at 9; Def.'s Reply at 3).

However, evidence that a similarly situated individual of a different gender was treated more favorably is not the only manner in which a plaintiff can satisfy its obligation on summary judgment to put forth sufficient evidence to support an inference of discrimination. *Cf. Abru-Brisson v. Delta Air Lines Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) ("[W]e conclude that a showing of disparate treatment, while a common and especially effective method of establishing the inference of discriminatory intent necessary to complete the *prima* facie case, is only one way to discharge that burden. This position is consistent with our prior decision in *Chambers* [*v. TRM Copy Centers Corp.,* 43 F3d. 29, 47 (2d Cir. 1994)] where we wrote that the inference of discriminatory intent could be drawn in several circumstance including but not limited to . . . 'invidious comments about others in the employee's protected group . . . or the sequence of events leading to the plaintiff's discharge.'") Here there is sufficient evidence for a jury to find that Plaintiff's termination was the result of gender discrimination.

The proffered basis for Plaintiff's termination was her poor performance. Whereas her 2013 performance review was positive, her 2014 review was not. In 2013 she received good, very good, and outstanding ratings in sections I and II, "Performance" and "General Performance" and satisfactory ratings in section III, "Professional Development/University Service." In 2014 she received either unsatisfactory or needs improvement in section I and all but one category of section II and unsatisfactory throughout section III. This despite the fact that most of the evaluation categories under each of the sections were the same for both years. And while a decline in performance ratings, in and of itself does not indicate discrimination, a decline must be viewed in light of the evidence as a whole. Here, given, among other things, the alleged inappropriate sexual comments of supervisors after Plaintiff's promotion, the alleged actions interfering with her performance of her duties, and the alleged physically threatening conduct

Plaintiff was subjected to, a jury could conclude that the unsatisfactory rating was a pretext for discrimination. *Cf. Kerzog v. Kingly Mfg.*, 156 F.3d 396-402-03 (2d Cir. 1998) (jury could find intentional discrimination on basis of, *inter alia,* off-color comments and supervisor's change in attitude following plaintiff's pregnancy announcement); *Peralta v. Roros 940 Inc.*, 72 F. Supp.3d 385, 394 (E.D.N.Y. 2014) (Noting an inference of pretext drew support from evidence that supervisor told coworker plaintiff was a 'bitch" for attending prenatal appointments, reprimanding her unnecessarily, and giving her additional work).

IV. **Hostile Work Environment Claim**

    A. **Applicable Law**

Where a claim of hostile work environment is asserted, the plaintiff must demonstrate, inter alia, "that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment . . . ." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (brackets in original) (quotation marks omitted). This standard is a "demanding one," *Scott v. Mem'l Sloan-Kettering Cancer Ctr.*, 190 F. Supp.2d 590, 599 (S.D.N.Y. 2002), requiring that a plaintiff establish both objective and subjective components, to wit, "not only that [the plaintiff] subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010); *see also Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) ("Plaintiff must show not only that [he] subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive.").

"Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such

an environment.' " *Demoret*, 451 F.3d at 149 (quoting *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 227 (2d Cir.2004)). Rather, "[c]ourts look at all circumstances to ascertain whether an environment is sufficiently hostile or abusive to support a claim." *Leibovitz v. N.Y. City Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001). "Among the factors to be considered in determining whether conduct is sufficiently hostile under the totality of the circumstances are: frequency; severity; whether the conduct is physically threatening or humiliating; and whether it interferes with an employee's performance." *Scott*, 190 F. Supp.2d at 599 (citing *Harris*, 510 U.S. at 23). "[T]he Second Circuit has made it clear that insensitive comments are not per se unlawful." *Id*. (citing *Williams v. County of Westchester,* 171 F.3d 98, 101 (2d Cir. 1999)). It is necessary for the plaintiff to establish a link between the actions by defendants and plaintiff's membership in a protected class. *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002); *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

    B.    **Application to the Present Case**

While the alleged statements, such as "Barbara's bush" and "sucking dick" by themselves are insufficient to show a hostile work environment, when coupled with the other evidence presented, a jury could conclude that Plaintiff was subjected to support a hostile work environment claim. First, it was not until she received her promotion, in a field allegedly dominated by males, that such comments were made. It was thereafter that she was referred to as "cunt" and "bitch," epithets used to demean women and as such comments "that could be viewed as reflecting discriminatory animus." *Patane v. Clark* , 508 F.3d 106, 112 (2d Cir. 2007). After her complaints regarding sexual innuendos and comments, her office was moved to a storage closet and her personal belonging were disturbed. The alleged incidents with Dwyer wherein he shoved her, drove his car so close to her she could feel the engine's heat, and urinated in the

women's bathroom, constitute physically threatening actions. Other alleged incidents interfered with her ability to work; they include her work vehicle being plowed in after a snow storm, interference in the contracts for which she was responsible, and mulch being placed in an inaccessible area. While not overwhelming, the evidence presented is sufficient to raise a question of fact as to whether Plaintiff was faced with "harassment . . . of such quality or quantity that a reasonable person would find the conditions of her employment altered for the worst." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).

## VI. The Retaliation Claim

### A. Applicable Law

To make out a prima facie case of retaliation, a plaintiff must show that "she engaged in protected participation or opposition under Title VII, that the employer was aware of this activity, that the employer took adverse action against the plaintiff, and that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Sosa v. Rockland County Community College*, 2017 WL 3105872 (S.D.N.Y. July 20, 2017) (internal quotation marks omitted); *see Miller v. Praxair*, 408 Fed. App'x 408, 409-10 (2d Cir. 2010).

The first element of a retaliation claim is that the plaintiff engaged in protected activity. Protected activity for purposes of the ADA and the ADEA include "informal protests of discriminatory employment practices, including making complaints to management." *DeVore v. Neighborhood Housing Servs. of Jamaica, Inc.,* 2017 WL 1034787, *9 (E.D.N.Y. Mar. 16, 2017) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 317-18 (2d Cir. 2015)). Generalized complaints, however, are insufficient; complaints must be sufficiently specific to make clear that the employee is complaining about conduct prohibited by the applicable discrimination statute.

*See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011). "To the extent that an employee complains about perceived 'unfair' treatment relating to job responsibility, hiring practices, or corporate policy, but fails to link the treatment to unlawful discrimination or to his protected status, he fails to establish that he was engaged in protected activity." *Penberg v. HealthBridge Mgmt.*, 823 F. Supp.2d 166, 191 (E.D.N.Y. 2011) (citing, inter alia, *Velasquez v. Goldwater Memorial Hosp.*, 88 F. Supp.2d 257, 264 (S.D.N.Y. 2000) (general complaints about corporate policy without linking it to plaintiff's status are insufficient to establish "protected activity" under Title VII).

**B.  Analysis**

Defendant asserts that it is entitled to summary judgment on the retaliation claim because (1) plaintiff did not engage in protected activity because she did not complain of actions that are arguably in violation of Title VII; (2) there is no causal connection; and (3) plaintiff cannot establish pretext.

Defendant's protected activity argument falls short of being convincing. Plaintiff complained both to her supervisor (Harrigan) and Defendant's Office of Institutional Diversity and Equity on several occasions beginning in 2013 and continuing into 2014 about, inter alia, comments containing sexual innuendoes at management meetings and being called "bitch," as well as the pushing incident with Dwyer. Moreover, she filed a complaint with the New York State Division of Human Right in which she claimed, inter alia, that after complaining about the "sucking dick" comments, the atmosphere became hostile. Any one of these is sufficient to constitute protected activity.

Turning to causal connection, as Plaintiff aptly notes, she was terminated within four months after her complaint to the NYS Division of Human Rights, a period of time sufficient to

support a causal connection. *See Gorman-Bakos v. Cornell Coop. Extension of Schnectady Cty.*, 252 F.3d 545, 555 (2d Cir. 2001) (noting five months in not too long to find a causal relationship).

Turning to pretext, the Court notes that there is no evidence that Plaintiff's performance was unsatisfactory until after she filed her Division of Human Rights complaint. Moreover, Plaintiff has put forth evidence that the expectation that she could maintain the greenhouse on her own, as well as perform her other duties, was unrealistic, that cuts to her budget contributed to her inability to perform her duties, and that actions by Dwyer interfered with her ability to perform her duties. In sum, it is a question for the jury to decide whether her termination was the result of prohibited retaliation.

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is denied.

**SO ORDERED.**

Dated: Central Islip, New York      s/ Denis R. Hurley
        January 30, 2019             Denis R. Hurley
                                         United States District Judge